## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

HD SUPPLY CONSTRUCTION SUPPLY, LTD.,

     Plaintiff,

             v.

REEF R. MOWERS and WASHOUTPAN.COM, LLC,

     Defendants.

Civil Action No.
1:19-cv-02750-SDG

### OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss the First Amended Complaint [ECF 28]; Plaintiff's Motion to Hold in Abeyance Ruling on Defendants' Motion to Dismiss [ECF 60]; Plaintiff's Motion for Leave to File Limited Supplemental Briefing in Support of its Response in Opposition to Defendants' Motion to Dismiss [ECF 64]; and, Plaintiff's Motion for Fed. R. Civ. P. 11 Sanctions and Attorneys' Fees [ECF 67].

For the reasons stated below, the Court **DENIES** Defendants' motion to dismiss and **DENIES** Defendants' request to file a second motion to dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiff's motion to file a supplemental brief is **GRANTED**, its motion to hold this ruling in abeyance is **DENIED AS MOOT**, and its motion for sanctions under Fed. R. Civ. P. 11 is **DENIED**.

# I.   Background

## a.   Facts

The following facts are accepted as true for purposes of this motion.[1] Plaintiff HD Supply Construction Supply, Ltd. (HDS) is a limited partnership organized under the laws of Florida with its principal place of business in Atlanta, Georgia.[2] HDS's parent company is HD Supply, Inc., which is incorporated in Delaware with its principle place of business in Georgia.[3] None of HDS's general or limited partners are residents of California.[4] Defendant Mowers is a resident of San Diego, California.[5] Defendant Washoutpan.com, LLC (WP) is organized under and has its principal place of business in California.[6] Mowers is WP's owner and

---

[1]   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]   ECF 19, ¶ 2.

[3]   *Id.* ¶ 3.

[4]   *Id.*

[5]   *Id.* ¶ 5. Citizenship, not residency, is the pertinent consideration for diversity jurisdiction. However, as HDS asserts subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367 in addition to § 1332, the Court need not evaluate Mowers' citizenship at this time. *Id.* ¶ 10.

[6]   *Id.* ¶ 6.

sole controlling member.[7]

HDS is an industrial products distributor that provides a broad range of products and services to professional customers.[8] WP imports pop-up containment products and industrial washout pans used to receive and contain liquid concrete waste.[9]

From approximately October 2012 through December 2013, Defendants solicited HDS to sell WP's pans to HDS's customers.[10] In November 2013, Defendants traveled to Georgia to meet with HDS employees.[11] In January 2014, the parties entered into a Supplier Buying Agreement (SBA).[12] Under the SBA, Defendants delivered WP's products to HDS in Georgia for HDS to sell.[13] From 2016 to 2018, Defendants derived a total of $89,272.38 in revenue selling their products through HDS.[14] During the course of the SBA, Defendants traveled to

---

[7]   *Id.* ¶ 8.

[8]   *Id.* ¶ 4.

[9]   *Id.* ¶ 9.

[10]   *Id.* ¶ 12.

[11]   *Id.* ¶ 13.

[12]   *Id.* ¶ 14.

[13]   *Id.* ¶¶ 18, 20.

[14]   *Id.* ¶ 23.

Georgia three times to visit HDS and attend a HDS supplier summit.[15] Defendants also frequently communicated with HDS employees via email and telephone.[16]

On February 7, 2018, the parties terminated the SBA and entered into a Confidential Settlement Agreement and Release (Settlement Agreement).[17] In 2018, after the SBA was terminated, HDS began purchasing pans for resale from a different vendor.[18] Since the termination of the SBA, Defendants have continued to make their products available to Georgia residents through at least one e-commerce site, and through third-party retailers that sell to Georgia residents.[19]

Around October 2018, Mowers started posting allegedly false and disparaging information about HDS and its products on LinkedIn and WP's website.[20] Mowers's posts claimed that HDS was falsely marketing and selling WP's pans as its own.[21] Mowers stated that these allegedly counterfeit pans were not certified by the Occupational Safety and Health Administration (OSHA) and

---

[15]  *Id.*

[16]  *Id.* ¶ 25.

[17]  *Id.* ¶ 27; *see* ECF 40-1, at 18–22 (Settlement Agreement).

[18]  ECF 19, ¶ 68.

[19]  *Id.* ¶¶ 28–52, 54–56.

[20]  *Id.* ¶¶ 82, 84, 86, 88, 114, 117, 119, 122, 124, 127, 130, 133, 136, 138, 140, 142, 144, 147, 149, 152, 155, 159, 166, 170, 180, 183, 188, 192, 196, 198, 201, 205, 209.

[21]  *Id.*

were likely to injure the buyer.[22] He also asserted that HDS was committing "Blatant. Criminal. Felony Fraud," tax evasion, and RICO violations.[23] Mowers sent text messages and emails to HDS employees asserting the same and that he would "do everything in my power to put you in jail."[24]

On November 14, 2018, Mowers visited HDS's website and purchased two pans with an American Express credit card.[25] After receiving the pans, Mowers contacted American Express, claimed the pans were counterfeit, and disputed the charges as fraudulent.[26] Defendants then filed a report with American Express to review and suspend merchant processing for HDS.[27] HDS had to pay freight and pick-up costs due to the disputed transactions.[28]

On November 30, 2018, HDS's counsel sent Mowers a cease and desist letter.[29] However, Mowers did not stop posting disparaging claims about HDS.

---

[22]   *Id.*

[23]   *Id.* ¶¶ 117, 183.

[24]   *Id.* ¶¶ 90, 92–94, 112, 115.

[25]   *Id.* ¶¶ 95, 102.

[26]   *Id.* ¶¶ 101, 108. The parties dispute whether the pans were shipped from Georgia. ECF 28-1, at 38.

[27]   *Id.*

[28]   *Id.*

[29]   *Id.* ¶ 158; *see* ECF 19-41 (Ex. NN).

HDS alleges that between January and April 2019, Mowers appeared at the construction sites of one of HDS's customers, Adolfson & Peterson Construction (APC), three different times.[30] Mowers allegedly impersonated an OSHA inspector while at the sites and made slanderous and defamatory statements about HDS to APC's employees.[31] As a result, APC contacted HDS and requested a return and refund of HDS's products.[32] HDS also alleges that Mowers appeared at the construction site of The Conco Companies (Conco), another one of HDS's customers, and made the same allegedly slanderous and defamatory statements about HDS, negatively affecting HDS's relationship with Conco.[33]

b.      **Procedural History**

HDS filed this action on June 17, 2019.[34] Defendants moved to dismiss the original Complaint on August 19, 2019.[35] In support of that motion, Defendants

---

[30]   ECF 19, ¶ 173.

[31]   *Id.*

[32]   *Id.* ¶ 174.

[33]   *Id.* ¶¶ 178–79.

[34]   ECF 1.

[35]   ECF 14.

filed a request for judicial notice regarding certain pieces of evidence, including filings from a related action in the Central District of California.[36]

On September 9, 2019, HDS filed its First Amended Complaint (FAC).[37] The FAC alleges the following causes of action against both Defendants: false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1) (Count I); defamation/libel *per quod* and defamation/libel *per se* (Counts II and III); slander *per quod* and slander *per se* (Counts IV and V); tortious interference with business relations (Count VI); deceptive trade practices under O.C.G.A. § 10-1-372 (Count VII); punitive damages (Count X); and, attorneys' fees (Count XI).[38] It also asserts federal and state RICO claims against Mowers (Counts VIII and IX).[39]

On October 7, 2019, Defendants filed a Motion to Dismiss the FAC based (among other things) on an alleged lack of personal jurisdiction and improper

---

[36]   ECF 15; *see Washoutpan.com, LLC v. HD Supply Construction Supply, Ltd.*, Case No. 2:19-cv-00494-AB-JEM (C.D. Cal. Jan. 22, 2019).

[37]   ECF 19.

[38]   *Id.* The FAC mislabels the counts. *See* ¶¶ 476, 479. For purposes of this motion, the Court will refer to the punitive damages count as Count X and the attorneys' fees as Count XI.

[39]   *Id.*

venue.[40] HDS filed its response in opposition on November 4.[41] In support of its response, HDS filed a request for judicial notice of the Second Amended Complaint filed in the California action.[42] On December 17, Defendants filed their reply brief and a supplemental declaration by Mowers.[43] Both parties have filed supplemental affidavits and declarations since the close of briefing.[44]

## II.   HDS's Motions to Hold Ruling in Abeyance and to File Supplemental Brief

On May 11, 2020, HDS filed a Motion to Hold in Abeyance Ruling on Defendants' Motion to Dismiss.[45] The motion asked for a 30-day stay while HDS collected more information regarding Brienne Owens, whom it had uncovered during discovery in the pending California action.[46] The motion states that HDS had reason to believe Owens worked for Defendants while living in Georgia.[47] Defendants omitted any reference to Owens in their motion to dismiss in this case

---

[40]   ECF 28.

[41]   ECF 40.

[42]   ECF 41; *see* ECF 41-1.

[43]   ECF 48; ECF 49.

[44]   ECF 45; ECF 50; ECF 54.

[45]   ECF 60.

[46]   ECF 60-1; ECF 64-1, at 7.

[47]   ECF 60-1, at 4.

and falsely represented that they had disclosed all of their contacts with Georgia.[48] HDS requested that the Court hold its ruling on the pending motion to dismiss in abeyance while it gathered additional information about Owens related to the personal jurisdiction inquiry. Defendants opposed the motion.[49]

On June 5, HDS filed a Motion for Leave to File Limited Supplemental Briefing in Support of its Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, based on the information it had discovered regarding Owens.[50] The supplemental briefing was provided as Exhibit 1 to HDS's memorandum in support of this motion.[51] Defendants opposed the motion.[52]

As explained in its motions, HDS was unaware of Owens until discovery in the California action.[53] Defendants oppose HDS's motions and argue that Owens

---

[48]  *See* ECF 14-2 (Mowers Decl.), ¶ 4 ("Neither I nor WP have ever had any offices, employees, or business operations in the State of Georgia. The only business I have conducted with persons in Georgia, and the only activities I have engaged in in Georgia, are described below.").

[49]  ECF 61.

[50]  ECF 64.

[51]  ECF 64-1, at 14–39 (Suppl. Resp.).

[52]  ECF 66.

[53]  ECF 68, at 4.

has no bearing on the current motion to dismiss; HDS's motions are untimely because it should have known about Owens earlier because she (under her maiden name Gamelier) had emailed HDS employees in 2018; and, in any event, the evidence is incomplete and misleading.[54] Defendants also claim that the omissions of Owens in the motion to dismiss and Mowers's declaration in support thereof were inadvertent.[55]

The Court has reviewed HDS's motions and Defendants' objections thereto and finds that HDS has shown good cause for its late filing. The supplemental filing and motions by HDS were only necessary because Defendants failed to do their due diligence before representing a false account of their Georgia contacts to this Court in their motion to dismiss. HDS timely investigated and sought to supplement when it discovered Owens.

Further, contrary to Defendants' assertions, Owens is most certainly relevant to Defendants' motion to dismiss for lack of personal jurisdiction. HDS has provided a declaration from Owens and other evidence that show Owens worked as a WP Executive Director for a period of three to four months in 2018.[56]

---

[54]  ECF 61, at 1–5; ECF 64-2, ¶ 2.

[55]  ECF 61, at 6.

[56]  ECF 64-1, at 3; ECF 64-2 (Owens Decl.), ¶¶ 6.

Owens asserts that she was hired to assist Mowers with organization, customer communication, and sales.[57] As part of her sales role, Owens states she was to "sell WP products over the phone and by e-mail, and go out in person and sell WP products to construction companies in Georgia since I was located in Georgia."[58] Defendants admit that Owens worked for WP intermittently from March through May 2018.[59]

Accordingly, the Court **GRANTS** HDS's motion to file supplemental briefing. HDS's motion to hold the Court's ruling on Defendants' motion to dismiss in abeyance is **DENIED AS MOOT**.

## III.    Motion to Dismiss

Defendants argue that the action should be dismissed because (1) this Court lacks personal jurisdiction over them; (2) the action violates the first-filed rule; (3) HDS is forum shopping; and, (4) some of HDS's claims are fatally defective.[60]

---

[57]   ECF 64-2, ¶ 11.

[58]   *Id.*

[59]   Specifically, Defendants claim that Owens worked for WP from March 20–30 and April 9–May 11, 2018. ECF 61, at 2–3; ECF 61-2, at 2.

[60]   ECF 28-1. Defendants also requests that the Court order HDS to show cause why the action does not violate Fed. R. Civ. P. 11 and why it should not have to reimburse Defendants for the cost of defense because the amended complaint does not correct the defects raised in Defendants' original motion to dismiss. *Id.* at 2. The Court declines this invitation.

The Court first addresses the personal jurisdiction and venue challenges. *Madara v. Hall*, 916 F.2d 1510, 1514 n.1 (11th Cir. 1990) ("As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint.") (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed.)). Having found that jurisdiction and venue are proper, the Court also addresses Defendants' Rule 12(b)(6) challenges.

## IV.   Personal Jurisdiction

### a.   Waiver

As a preliminary matter, the Court rejects HDS's arguments that Defendants waived their objection to personal jurisdiction through the SBA and the terms and conditions on HDS's website.

### i.   SBA's Forum Selection Clause

HDS alleges that Defendants waived personal jurisdiction by signing the SBA, which contains a forum selection clause.[61] The forum selection clause covers "[a]ny dispute arising out of, relating to or concerning the SBA" and states:

> If HD Supply does not elect to submit a dispute to arbitration, the parties agree that any civil action to decide such dispute shall be brought in either the US District Court for the Northern District of Georgia,

---

[61]   ECF 40, at 13–16.

> Atlanta Division, or the Superior Court of Cobb County, Georgia.[62]

HDS argues that the forum selection clause survives the parties' Settlement Agreement terminating the SBA because the Settlement did not expressly void the forum selection clause.[63] However, as Defendants argue, the forum selection clause is expressly limited to disputes "arising out of, relating to or concerning the SBA."[64] It is undisputed that this action does not arise from or concern the SBA. Thus, it would be contrary to the express language of the contract to enforce the forum selection clause in this unrelated action.

### ii.    Terms and Conditions on HDS's Website

HDS next alleges that Defendants waived personal jurisdiction by accepting the terms and conditions on its website when Mowers purchased three HDS pans in September and November of 2018.[65] The terms and conditions were posted on the website via a hyperlink at the very bottom of the webpage that states "Use of this site is subject to HDS IP Holding, LLC. Legal Terms, Terms of Sale, and

---

[62]    ECF 40-1, at 12 (SBA ¶ 12.5).

[63]    ECF 40, at 15.

[64]    ECF 48, at 4–5.

[65]    ECF 40, at 6–8.

Privacy."[66] The internet customer would have to click on the hyperlinks embedded in "Terms"[67] and "Terms of Sale"[68] to see the language referring to the jurisdiction of Georgia courts and applicability of Georgia law. HDS does not contend that customers must click "agree" to any of these terms before purchasing a product from their website. Federal courts have referred to these types of electronic agreements as "browsewrap agreements." *IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*, 975 F. Supp. 2d 1267, 1280 (S.D. Fla. 2013) (defining "browsewrap" as agreements where the "website terms and conditions of use are posted on the website typically as a hyperlink at the bottom of the screen") (quoting *Hines v. Overstock.com*, 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009)).

First, HDS does not provide any authority for enforcing such terms and conditions under Georgia law, which it claims controls this matter. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002) ("[A] court should generally apply state-law principles to the issue of contract formation."). Second, the cases cited by Defendants agree that knowledge of the terms is required where the provisions are inconspicuous. *Id.* at 35 ("Reasonably conspicuous notice of the

---

[66]   ECF 40-3, at 6.

[67]   *Id.* at 8.

[68]   *Id.* at 10.

existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility."); *Sw. Airlines Co. v. BoardFirst*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *5 (N.D. Tex. Sept. 12, 2007) ("[T]he validity of a browsewrap license turns on whether a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site."); *Van Tassell v. United Mktg. Grp.*, 795 F. Supp. 2d 770, 789 (N.D. Ill. 2011) (denying motion to compel arbitration because there was a dispute of material fact regarding "whether [the plaintiffs] ever viewed the enrollment web pages containing the Terms and Conditions").

HDS's assertion that Defendants had actual or constructive knowledge of the terms and conditions is unpersuasive. HDS claims that Defendants had knowledge because they worked with HDS for four years prior to when Mowers ordered the pans and during those four years, Defendants supplied HDS with products to be distributed to customers, "including through the White Cap website."[69] This conclusory statement is not supported by any reference to discussions with Defendants about the website sales or anything else that could lead the Court to believe Defendants had actual or constructive knowledge about

---

[69]   ECF 40, at 7.

the terms. Additionally, Mowers's Supplemental Declaration, filed with Defendants' reply brief, states that he did not understand that he was subjecting himself to personal jurisdiction in Georgia, he was not directed to any webpage indicating the same when he made the purchases, and he did not notice the reference to the terms and conditions at the bottom of the webpage.[70]

HDS's assertion that Defendants were on "inquiry notice" of the terms and conditions because the terms were "clearly identified in contrasting, yellow, bolded, text set before a black background" is also unavailing.[71] HDS's description of the terms overstates their obviousness. The terms are on the very last line of the webpage—below even the copyright designation—in small print.[72] As the Second Circuit found in *Specht*, HDS's terms were not immediately visible to provide notice and "a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms." 306 F.3d at 32.

Accordingly, the Court finds that Defendants did not waive their objection to personal jurisdiction.

---

[70]   ECF 49 (Mowers Suppl. Decl.), ¶ 4.

[71]   ECF 40, at 7.

[72]   ECF 40-3, at 6.

**b.    Legal Standard**

"The plaintiff has the burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). This burden is satisfied by presenting sufficient evidence to defeat a motion for directed verdict. *Meier*, 288 F.3d at 1269. If the defendant then submits affidavits to the contrary that include more than conclusory assertions, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Id.* "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.* (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945)). It is satisfied when "jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe*, 326 U.S. at 316).

The Supreme Court recognizes two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1779–80 (2017). "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction." *Meier*, 288 F.3d at 1274 (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000)). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe*, 326 U.S. at 317).

"Specific jurisdiction is very different." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. For specific jurisdiction, "the *suit* must arise out or relate to the defendant's contacts with the forum. . . . [S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* Before exercising specific jurisdiction over a nonresident defendant, federal courts must undertake a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not

violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).[73]   The Georgia long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Diamond Crystal*, 593 F.3d at 1259 (interpreting *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa*, 279 Ga. 672 (2005)).

---

[73] *Diamond Crystal* applies the two-step inquiry to a diversity jurisdiction action; however, the same inquiry is applied in federal question actions where the statute underlying the federal question is silent regarding service of process. *Gen-Tran Corp. v. Universal Prod. Concepts, Inc.*, No. 1:08-CV-3777-BBM, 2009 WL 10664931, at *2 (N.D. Ga. Nov. 5, 2009) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). Here, HDS has asserted two federal causes of action. The Lanham Act is silent regarding service of process. *Id.*; *Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 328236, at *3 (S.D. Fla. Jan. 23, 2015). The federal RICO statute does allow for nationwide service of process. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) ("Section 1965(d) of the RICO statute provides for service in any judicial district in which the defendant is found."). However, HDS did not allege personal jurisdiction under its RICO claim. Instead, the FAC asserts Defendants' contacts with Georgia as the basis for personal jurisdiction. ECF 19, ¶¶ 11, 221. Additionally, both parties assert that the *Diamond Crystal* two-step inquiry applies to this action. ECF 28-1, at 12–13; ECF 40, at 19. Accordingly, the Court finds that for specific jurisdiction to exist, Defendants' contacts with the forum must satisfy the Georgia long-arm statute and constitutional due process.

**c.    Discussion**

> ***i.    General Jurisdiction***

> The "paradigm all-purpose forums" in which a corporation is at home are the corporation's place of incorporation and its principal place of business. Outside of these two exemplars, a defendant's operations will "be so substantial and of such a nature as to render the corporation at home in that State" only in an "exceptional case."

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018) (first quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); then quoting *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)), *cert. denied sub nom. Waite v. Union Carbide Corp.*, 139 S. Ct. 1384 (2019)).

HDS asserts that Defendants are subject to general jurisdiction in this forum because they can be considered "at home" in Georgia.[74] HDS provides the following evidence in support of this claim: Defendants' revenue under the SBA; Defendants' ongoing warranty and defect obligations following the termination of the SBA; and, Owens's work for Defendants in the state. Conversely, Defendants argue that the FAC's allegations cannot support a finding that they are subject to general jurisdiction in this Court.[75]

---

[74]   ECF 40, at 13–19.

[75]   ECF 28-1, at 19.

HDS has failed to show exceptional circumstances that render Defendants essentially at home in this non-domicile forum. *Waite*, 901 F.3d at 1317; *see also Brown v. Ford Motor Co.*, 347 F. Supp. 3d 1347, 1350 (N.D. Ga. 2018) ("[The plaintiff] makes no argument that any exceptional circumstances are present here to subject [the defendant] to general jurisdiction, and the Court is aware of none. Therefore, the Court concludes it does not have general jurisdiction over [the defendant].").
Nor could Defendants' contacts with Georgia support such a finding.

Defendants' contacts "do not 'closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.'" *Waite*, 901 F.3d at 1318 (citing *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015)). While Defendants had an ongoing business relationship with HDS, a single contract with a forum *company* does not show "continuous and systematic" contact between Defendants and the forum *state*. Defendants are not registered to do business in Georgia.[76] Since the termination of

---

[76] ECF 19, ¶ 57 ("At no time prior to the drafting of this complaint have Defendants registered for approval to do business as a foreign limited liability corporation with the Secretary of State of the State of Georgia, despite making multiple sales to residents of the State of Georgia, in what appears to be a calculated effort to thwart being subject to personal jurisdiction in Georgia."); *see* O.C.G.A. § 14-2-1501(a) ("A foreign corporation may not transact business in this state until it obtains a certificate of authority from the Secretary of State.").

the SBA, Defendants have only sold two pans to Georgia residents through e-commerce and do not direct marketing or advertising to the state.[77] Their sole employee in Georgia was employed for three to four months during which she did not make any sales in the state.[78] These contacts do not show exceptional circumstances that render Defendants at home in this forum. *Cf. Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447–48 (1952) (finding the defendant corporation at home in Ohio because its owner ran the company from Ohio when he had to temporarily relocate the enterprise to Ohio from the Philippines during the war).

The Court finds that Defendants are not subject to general jurisdiction in this forum.

### ii.    Specific Jurisdiction

To satisfy the Georgia long-arm statute, the plaintiff must show that personal jurisdiction is permitted under one of the express statutory bases, interpreted and applied literally. *Diamond Crystal*, 593 F.3d at 1259. Georgia's long-

---

[77] ECF 14-2 (Mowers Decl.), ¶¶ 5–6.

[78] ECF 64-2 (Owens Decl.), ¶¶ 6, 20. Both sides presented evidence supporting the claim that Owens was either an employee or an independent contractor. As such, for purposes of the personal jurisdiction inquiry, the Court must assume that Owens was an employee. *Meier*, 288 F.3d at 1269 ("Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.").

arm statute enumerates six separate bases for personal jurisdiction. O.C.G.A. § 9-10-91(1)–(6). HDS argues that Defendants are subject to specific jurisdiction under subsection (1) and (3) of the statute, which provide:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;
>
> …
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . .

O.C.G.A. § 9-10-91(1), (3). Since the Court's application of the Georgia long-arm statute is governed by state law, the Court "must interpret and apply Georgia's long arm statute in the same way as would the Georgia Supreme Court." *Diamond Crystal*, 593 F.3d at 1258.

### 1.    Transacting Business in the State

Subsection (1) "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Diamond Crystal*, 593 F.3d at 1259 (interpreting *Innovative Clinical*, 279 Ga. 672). In order to satisfy this subsection, the plaintiff's cause of action must "'arise[] out of' a nonresident defendant's 'transact[ion] of any business within [Georgia].'" *Diamond Crystal*, 593 F.3d at 1264 (quoting O.C.G.A. § 9-10-91(1)).

"Interpreted literally, 'transacts any business' requires that the 'nonresident defendant has purposefully done some act or consummated some transaction in [Georgia].'" *Diamond Crystal*, 593 F.3d at 1264 (quoting *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518 (2006)). The defendant need not physically enter the state to satisfy this requirement; "a nonresident's mail, telephone calls and other intangible acts, though occurring while the defendant is physically outside of Georgia, must be considered." *Diamond Crystal*, 593 F.3d at 1264 (citing *Innovative Clinical*, 279 Ga. at 675–76). Accordingly, the Court must "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia." *Diamond Crystal*, 593 F.3d at 1264.

HDS claims that Defendants are subject to personal jurisdiction under this provision because: (1) Defendants made two e-commerce sales to Georgia residents; and (2) Defendants bought three pans from HDS.[79] Notably, Defendants' motion fails to specifically address whether jurisdiction is appropriate under the 'transacting business' prong of Georgia's long-arm statute, instead only broadly asserting that they have had limited contact with Georgia and do not direct their business to this state.[80]

The Court finds that the two e-commerce sales to Georgia residents cannot support jurisdiction under this subsection because this action does not arise out of those sales. *Emory Grp. LLC v. ID Sols., LLC*, No. 1:14-CV-13-TWT, 2014 WL 1415021, at *3 (N.D. Ga. Apr. 10, 2014) ("Here, the Plaintiff argues that there is jurisdiction under subsection (1) because the Defendant admits that it has had two customers in Georgia. But it is not enough to show that the Defendant transacted

---

[79] ECF 40, at 22–24. While the FAC alleges that Defendants purchased two pans from HDS on November 14, 2018, HDS's response asserts that Defendants purchased an additional pan from HDS on September 17, 2018. *Id.* at 22; ECF 40-2, ¶¶ 29–33.

[80] ECF 28-1, at 35–38. For reasons unknown, Defendants' motion addresses the original complaint and only adds arguments regarding the FAC in the last five pages of the brief. Consequently, while Defendants spend multiple pages addressing O.C.G.A. § 9-10-91(2), which is not asserted as a basis for jurisdiction in the FAC, they fail to specifically address subsection (1).

business in Georgia. The Plaintiff must also show that its cause of action arises out of those transactions.") (citing *ATCO Sign & Lighting Co.*, 298 Ga. App. 528, 529 (2009)); *see also Asman v. Dykema*, No. 1:15-CV-01866-ELR, 2016 WL 4582072, at *5 (N.D. Ga. Feb. 16, 2016) ("The express language of the long-arm statute confers personal jurisdiction over nonresidents only as to a cause of action arising from those things enumerated in the act.").

However, Defendants' online purchase of three pans from HDS supports jurisdiction under subsection (1) of the Georgia long-arm statute because those purchases were directed at a Georgia business and they are related to HDS's claims in this action. Defendants purposefully transacted business in this state by purchasing products from HDS's website, knowing that HDS is a Georgia company that operates from this state. *Cf. Diamond Crystal Brands*, 593 F.3d at 1265 (where the defendants placed the purchase orders through the plaintiff's California agent).[81] Thus, the Court finds that Defendants transacted business in Georgia, satisfying subsection (1) of the Georgia long-arm statute.

---

[81] The parties dispute whether the pans were originally shipped from Georgia. Defendants claim that the pans were shipped from California and processed in Arizona. ECF 48, at 8–10; ECF 49 (Mowers Suppl. Decl.), ¶ 3. HDS provided an affidavit supporting its claim that the pans were shipped and processed from Georgia. ECF 40-2, ¶¶ 30, 32, 35, 37, 40, 42. For purposes of this discussion, the Court accepts HDS's assertion that the pans were shipped from

## 2.     Committing a Tortious Injury in the State

In order to satisfy subsection (3) of the Georgia long-arm statute, HDS must show that (1) Defendants "commit[ted] a tortious injury in this state" and (2) Defendants "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from . . . this state." O.C.G.A. § 9-10-91(3).

The Court finds that jurisdiction is proper under subsection (3). First, Defendants allegedly committed a tortious injury in this state caused by an act or omission outside of the state. Defendants point to specific injuries alleged in the FAC: Defendants' interference with HDS's contracts with APC and Conco.[82] However, Defendants argue that those alleged injuries occurred outside of the state because APC and Conco are based outside of Georgia.[83] This argument is nonsensical. While APC and Conco may also have suffered an injury through Defendants' alleged interference, the relevant injury in this action is the alleged injury to HDS. That alleged injury clearly occurred in Georgia because, as Defendants are well aware, this is where HDS is domiciled. *See Keeton v. Hustler*

---

and processed in Georgia. *Aero Toy Store*, 279 Ga. App. at 524.

[82]     ECF 28-1, at 26.

[83]     *Id.*

*Magazine, Inc.*, 465 U.S. 770, 780 (1984) (finding that the "bulk of the harm" in a libel action occurs in the plaintiff's domicile); *Interactive Designs, Inc. v. Kepler*, No. 1:07-CV-1353-TCB, 2008 WL 11333763, at *5 (N.D. Ga. Mar. 10, 2008) (finding that the tortious injury was felt in Georgia, where the company plaintiff was located). Accordingly, the FAC adequately alleges specific injuries that occurred in Georgia through Defendants' alleged interference with the APC and Conco contracts.

Second, HDS has shown that Defendants regularly did business in, solicited business from, and derived substantial revenue from goods consumed in Georgia. According to the undisputed evidence presented by HDS, Defendants received almost $128,000 in revenue during the course of the SBA from sales to Georgia, and HDS was Defendants' largest customer during that time.[84] During the parties' business relationship, Mowers visited Georgia three times and regularly conversed with HDS employees located in Georgia via email and telephone.[85] Additionally, Defendants had an employee located in the state for three to four

---

[84]   ECF 40, at 25 (citing ECF 40-2, ¶¶ 10–22; ECF 19 (FAC), ¶¶ 14–23); ECF 40-2, ¶ 48.

[85]   ECF 19, ¶¶ 17, 20, 24, 25; ECF 14-2 (Mowers Decl.), ¶ 8.

months who actively tried to sell products to construction companies in Georgia.[86] The Court finds such contacts with the state sufficient to satisfy the second requirement under subsection (3).[87]

HDS has shown that it suffered a tortious injury in Georgia and that Defendants regularly did business in this state and derived substantial revenue from goods used or consumed in this state. Accordingly, the Court finds that subsection (3) of the Georgia long-arm statute is also satisfied.

### iii.   Due Process Inquiry

Having found that subsections (1) and (3) of the long-arm statute are satisfied, the Court now must decide whether the exercise of personal jurisdiction

---

[86]   ECF 64-1 (Suppl. Resp.), at 29.

[87]   For the first time in their reply brief, Defendants argue that O.C.G.A. § 9-10-91(3) requires that the defendant's in-state conduct be ongoing at the time of litigation. ECF 48, at 11. However, they have not provided any support for this argument, nor has the Court found any. To the contrary, the length of time between relevant conduct and litigation appears to be relevant only to the reasonableness inquiry under the due process clause. *Beasley v. Beasley*, 260 Ga. 419, 422 (1990)); *see also Perrigo Co. v. Merial Ltd.*, 215 F. Supp. 3d 1329, 1340 (N.D. Ga. 2016) (finding that, under subsection (1), timing is only relevant to the due process and "aris[ing] from" analyses). Further, Defendants waived this argument by raising it for the first time in their reply brief. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 n.11 (11th Cir. 2009).

over Defendants in this matter comports with the Due Process Clause of the

Fourteenth Amendment.

> In specific jurisdiction cases, [the Eleventh Circuit] appl[ies] the three-part due process test, which examines: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal

citations omitted). If the plaintiff establishes the first two prongs, the defendant

"must make a 'compelling case' that the exercise of jurisdiction would violate

traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond

Crystal*, 593 F.3d at 1267).

"The inquiry whether a forum State may assert specific jurisdiction over a

nonresident defendant 'focuses on the relationship among the defendant, the

forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting

*Keeton*, 465 U.S. at 775). However, the plaintiff's residence is relevant to this

jurisdictional inquiry. "That is, [the] plaintiff's residence in the forum may,

because of defendant's relationship with the plaintiff, enhance defendant's

contacts with the forum. Plaintiff's residence may be the focus of the activities of the defendant out of which the suit arises." *Keeton*, 465 U.S. at 780; *see also Calder v. Jones*, 465 U.S. 783, 788 (1984) ("The plaintiff's lack of 'contacts' will not defeat otherwise proper jurisdiction, but they may be so manifold as to permit jurisdiction when it would not exist in their absence.").

Here, HDS's claims arise out of Defendants' allegedly tortious contacts with Georgia. As in *Keeton* and *Calder*, Defendants' allegedly defamatory and libelous statements were directed at HDS in Georgia and this action arises from those activities. Accordingly, the first prong is easily satisfied.

In intentional tort cases, the Eleventh Circuit allows for two different tests for determining whether a defendant purposefully availed himself or itself of the forum state: (1) the "effects test" established by the Supreme Court in *Calder*, or (2) the traditional purposeful availment analysis. *Louis Vuitton*, 736 F.3d at 1356. Under the *Calder* effects test, "a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* "This occurs when the tort: '(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.'" *Id.* (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1285–86, 1287–88 (11th Cir. 2008)). The

Court finds that Defendants purposefully availed themselves of this forum under the *Calder* effects test.

As in *Calder*, Defendants' "intentional, and allegedly tortious, actions were expressly aimed at [Georgia]." 465 U.S. at 789. Defendants' actions were aimed at HDS and its employees in an attempt to prevent consumers from using or purchasing HDS's products. Moreover, Defendants allegedly threatened HDS employees via email and text messages, knowing that those employees reside in Georgia. Defendants intended their actions to have a harmful effect on HDS, and that effect necessarily occurs where HDS is domiciled. Thus, the "brunt of the harm" was suffered in Georgia. *Id.* at 789. Under these circumstances, Defendants must have "'reasonably anticipate[d] being haled into court [in Georgia]' to answer for the truth of [their] statements." *Id.* at 790 (quoting *World-Wide Volkswagen*, 444 U.S. 286, 297 (1980)). As such, jurisdiction over Defendants is proper in Georgia "based on the 'effects' of their [California] conduct in [Georgia]." *Calder*, 465 U.S. at 789.

Finally, the Court must address whether the exercise of personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice by considering the following factors: "(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in

obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Louis Vuitton*, 736 F.3d at 1358 (quoting *Lovelady*, 544 F.3d at 1288). "Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise." *Lovelady*, 544 F.3d at 1284.

Defendants have neither argued nor shown that the exercise of personal jurisdiction over them in Georgia would violate fair play and substantial justice. They generally assert that they are a small business and that HDS is trying to burden them by initiating litigation in Georgia despite the related action in California.[88] However, they have not offered any evidence of finances or other limitations that support a finding that any such burden is constitutionally impermissible. Further, the forum's interest in adjudicating the dispute and HDS's interest in obtaining convenient and effective relief favor litigating this action in Georgia. *Lovelady*, 544 F.3d at 1288 ("Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida. The Constitution is not offended by Florida's assertion of its jurisdiction over such nonresident tortfeasors.") (citations omitted).

---

[88]   ECF 28-1, at 10.

Accordingly, the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

The Court finds that the exercise of specific personal jurisdiction over Defendants in this matter is proper under Georgia's long-arm statute and the Fourteenth Amendment's Due Process Clause.

## V.     Venue and the First-Filed Rule

Defendants argue that, even if personal jurisdiction is satisfied, venue is improper because HDS violated the first-filed rule by filing this action in the Northern District of Georgia while a related action is pending in the Central District of California.[89] "Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). "In absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) (citing *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971)).

---

[89]    ECF 28-1, at 26.

"'The rule rests on principles of comity and sound judicial administration' and serves 'to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court.'" *Merswin v. Williams Cos.*, No. CIV.A. 1:08-CV-2177T, 2009 WL 249340, at *2 (N.D. Ga. Jan. 30, 2009) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603–04 (5th Cir. 1999) (emphasis in original)).

> "Although no precise test has been articulated for making this determination [that litigation is duplicative], the general rule is that a suit is duplicative of another suit if the parties, issues and available relief do not significantly differ between the two actions." Under those circumstances, we have recognized, federal courts "are afforded broad discretion in determining whether to stay or dismiss litigation in order to avoid duplicating a proceeding already pending in another federal court."

*Georgia ex. rel. Olens v. McCarthy*, 833 F.3d 1317, 1321 (11th Cir. 2016) (quoting *I.A. Durbin, Inc v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551, 1551–52 (11th Cir. 1986) (citing cases)).

The Court finds that the first-filed rule does not apply because this action is not duplicative of the one pending in California. At the core of the California action is the claim that HDS manufactured, or instructed another to manufacture, and sold pans that improperly imitate WP's pans. *See* Second Am. Compl.,

*Washoutpan.com, LLC v. HD Supply Construction Supply Ltd. and Does 1–10*, 2:19-cv-00494-AB-JEM (C.D. Cal. Aug. 26, 2019), ECF 34.[90] The crux of *this* case is that Defendants allegedly committed tortious acts, publicly and privately, against HDS. Although there is no doubt some degree of overlap between the two cases in that HDS alleges here that Defendants' statements that HDS infringed WP's product are not true, HDS's false statement allegations go far beyond Defendants' assertions of infringement.

For example, in support of its claims HDS alleges that Defendants posted false statements on the internet that HDS's pans are unsafe and disregard the health and safety of its customers; that it had committed felony fraud, tax evasion, and RICO violations; and, that its executives were criminals. None of these allegations pertain to the California action, and the claims themselves do not overlap to any substantial degree. HDS's claims in this case will remain viable even if the California action finds HDS liable for infringement. Further, Mowers, the only Defendant named in the federal and Georgia RICO claims, is not named

---

[90] Both parties request that the Court take judicial notice of various filings in the California action. *See e.g.*, ECF 15; ECF 41. The Court has reviewed the filings and agrees that it may take judicial notice thereof. *Cash Inn of Dade, Inc. v. Metro. Dade Cnty.*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases.").

in the California action. Nor are the California defendants "Does 1 through 10" included in this action. At bottom, the first-filed rule does not warrant dismissal or transfer of this case because the cases are not duplicative.

Moreover, the Court finds that compelling circumstances support keeping this action here. Taking the allegations in the FAC as true, Defendants have committed serious tortious and potentially criminal conduct against a Georgia corporate citizen. Among other things, HDS alleges that Mowers appeared at multiple construction company job sites falsely posing as a federal government official, all for the purpose of intentionally interfering with HDS's contracts. These allegations are deeply troubling to the Court. Given the serious nature of the allegations and the predominance of state law claims, the Court finds that the ends of justice are served in keeping this action in HDS's home state.[91]

## VI.    Defendants' Fed. R. Civ. P. 12(b)(6) Arguments for Dismissal

Defendants' motion to dismiss alternatively raises various bases for dismissal of HDS's claims under Fed. R. Civ. P. 12(b)(6). Defendants request that, if their motion to dismiss for lack of jurisdiction is denied, they be given an

---

[91]   Defendants also argue that HDS engaged in forum shopping when it filed this action here instead of in California. However, since the Court has found that the first-filed rule does not apply and Defendants have not requested a transfer under 28 U.S.C. §§ 1404 or 1406, the Court does not address this argument.

additional opportunity to further brief why HDS has failed to state claims for relief for the specific causes of action raised in the FAC.[92]

Defendants have not presented any basis for granting them leave to file a second Fed. R. Civ. P. 12(b) motion.[93] Nor does the Court find one. For the reasons stated below, the Court finds that Defendants' Fed. R. Civ. P. 12(b)(6) arguments are without merit and no further briefing on these claims is warranted.

### a.    Defamation Claims

Defendants argue that Georgia does not recognize claims for commercial disparagement or trade libel.[94] *See State Farm Mut. Auto. Ins. Co. v. Hernandez Auto Painting & Body Works, Inc.*, 312 Ga. App. 756, 758 (2011) (holding that trade libel is not a separate tort under Georgia law); *Astral Health & Beauty, Inc. v. Aloette of Mid-Mississippi, Inc.*, 895 F. Supp. 2d 1280, 1284–85 (N.D. Ga. 2012) (holding, based

---

[92]   ECF 28-1, at 4 n.2, 31 n.8.

[93]   Defendants note that the Court had not granted their pending motion to file excess pages at the time they submitted their motion. ECF 28-1, at 4 n.2. However, Defendants still filed a 33-page brief assuming that the Court would permit the excess pages. Therefore, Defendants had sufficient pages to adequately raise all of their Rule 12(b)(6) arguments. Additionally, they would have had more space had they not inexplicably decided to address the original complaint, spending only five pages at the end of the brief addressing the FAC. Moreover, Defendants did not even attempt to address HDS's responses to their 12(b)(6) arguments in their reply, nor did they ask for additional pages to do so.

[94]   ECF 28-1, at 31–32.

on *Hernandez*, that Georgia law does not recognize commercial disparagement or trade libel claims); *FieldTurf USA Inc. v. TenCate Thiolon Middle E., LLC*, No. 4:11-CV-50-TWT, 2011 WL 13234177, at *3 & n.2 (N.D. Ga. Dec. 20, 2011) (holding that Georgia law does not recognize the tort known as commercial disparagement, trade libel, or injurious falsehood). However, HDS does not assert a commercial disparagement or trade libel claim, it asserts a defamation claim, and "commercial disparagement and defamation are different torts." *FieldTurf*, 2011 WL 13234177, at *2 n.1; *see also Astral Health & Beauty*, 895 F. Supp. 2d at 1285 (granting the defendant leave to amend its counterclaim to assert its commercial disparagement/trade libel claim as a straight libel claim); *Hernandez*, 312 Ga. App. at 758 (distinguishing *Eason Publ'ns v. Atlanta Gazette, Inc.*, 141 Ga. App. 321 (1977), which held that a corporation can assert libel or defamation claims). Thus, Defendants have not provided any support for their claim that straight libel or defamation claims as alleged by HDS in this action are not recognized under Georgia law.

The Court also rejects Defendants' arguments that the defamation claims should be dismissed because they do not allege that Defendants accused HDS of a

specific crime.[95] The FAC indeed alleges that Defendants specifically accused HDS of violating the Trademark Counterfeiting Act of 1984, as well as committing tax evasion, RICO offenses, and felony fraud.[96] The Court finds these allegations sufficiently specific to support a defamation claim.

Defendants' motion to dismiss HDS's defamation claims is **DENIED**.

### b.   False Advertising Claim

Based on a Seventh Circuit case, Defendants assert that HDS's false advertisement claims should fail because such claims require product disparagement and Defendants' alleged statements accusing HDS of felony fraud were directed at HDS and its employees, not its products.[97] Defendants also contend that HDS misreads the meaning of Defendants' internet posts. The Court rejects both of these arguments.

Even assuming that binding authority in this circuit limited false advertising claims to product disparagement (Defendants cite to no such authority), in this case HDS does in fact allege that Defendants disparaged its products: "For

---

95   ECF 28-1, at 32 (citing *Stimson v. Stryker Sales Corp.*, No. 1:17-CV-00872-WMR-JFK, 2019 WL 2240444, at *19 (N.D. Ga. Jan. 24, 2019)).

96   ECF 40, at 38.

97   ECF 28-1, at 32 (citing *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 993–94 (7th Cir. 2006)).

example, Defendants have knowingly, willfully, and falsely represented and misled consumers to believe that [HDS] has and continues to commit felony crimes by selling its 'fake/dangerous products,' which disparages [HDS's] products."[98] Further, Defendants' arguments concerning HDS's purported misreading of its internet posts raise an issue of fact that has no place in determining whether HDS sufficiently alleged a false advertisement claim.

Defendants' motion to dismiss HDS's false advertisement claim is **DENIED**.

### c.   Tortious Interference Claim

Defendants argue that HDS has not claimed that their alleged tortious conduct proximately caused damage in the form of a specific loss of business.[99] They then state that the FAC fails to identify lost business from APC or Conco.[100] However, exactly two paragraphs down from the portion of the FAC quoted by Defendants, the pleading states "Defendants' tortious conduct proximately caused damage to [HDS], including, but not limited to, [HDS] specifically losing the profit and business of the prior sales of its pans to [APC] after [APC] returned the pans

---

98   ECF 19, ¶ 229.

99   ECF 28-1, at 33.

100   *Id.* at 34 (quoting ECF 19, ¶ 357).

it purchased from [HDS] as a result of Defendants' tortious interference with business relations."[101] Thus, the Court finds this argument to be without merit.

Defendants' motion to dismiss HDS's tortious interference claim is **DENIED**.

### d.    RICO Claims

Defendants assert that HDS's federal RICO claim fails to meet the "closed-end continuity" requirement and its Georgia RICO claim fails to identify property that Mowers allegedly obtained.[102] They further allege that the wire and mail fraud allegations are not pleaded with sufficient particularity because HDS has not alleged reliance, a specific injury distinct from Mowers's alleged defamation, and the falsity of Mowers's statements.

In support of its argument that HDS cannot meet the closed-ended continuity requirement, Defendants cite to *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1254 (11th Cir. 2004). However, the continuity requirement can be satisfied by showing either closed-end continuity or open-ended continuity. *Id.* HDS contends that it satisfied the open-ended continuity requirements.[103]

---

[101]   ECF 19, ¶ 359.

[102]   ECF 28-1, at 35.

[103]   ECF 40, at 40–41.

Defendants have not argued otherwise, nor did they reply to HDS's response asserting open-ended continuity. As such, the Court finds that Defendants' closed-ended continuity argument does not demonstrate a failure to state a claim.

Defendants' argument that HDS failed to identify the property that Mowers allegedly obtained is belied by the FAC's identification of specific property. In alleged Predicate Act Thirteen of the FAC, HDS refers to a series of texts sent to an HDS employee by Mowers on November 18, 2018.[104] In describing how those texts show theft by extortion, in violation of O.C.G.A. § 16-8-16, HDS alleges that "it constitutes Mowers['s] attempt to obtain the property of Plaintiff—its business associated with pan sales and its right to solicit the sale of pans that compete with WP."[105] As such, Defendants' argument is without merit.

Finally, the Court finds Defendants' haphazard argument that HDS has failed to plead mail and wire fraud in compliance with Fed. R. Civ. P. 9(b) unavailing. Defendants fail to cite the pleading requirements for mail and wire fraud under the Eleventh Circuit or explain how the FAC fails to meet those requirements. Additionally, as HDS asserts in its response, it has specifically

---

[104]   ECF 19, ¶ 407.

[105]   *Id.* ¶ 409.

alleged that Mowers's statements and actions were fraudulent and that the fraud resulted in damage to HDS.[106]

Defendants' motion to dismiss HDS's federal and state RICO claims is **DENIED**.

## VII.   Motion for Sanctions and Attorneys' Fees

HDS filed a Motion for Fed. R. Civ. P. 11 Sanctions and Attorneys' Fees predicated on Defendants' false representations regarding Owens both in Mowers's original declaration and in Defendants' opposition to the Owens motions.[107]

### a.   Legal Standard

Under Rule 11, an attorney who presents a pleading, motion, or other paper in federal court certifies that to the best of the attorney's knowledge, based on a reasonable inquiry, the following is true:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

---

[106]   ECF 40, at 41–42.

[107]   ECF 67.

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). If it is later determined that the attorney did not comply with Rule 11(b), the Court may impose appropriate sanctions on the "attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

"The purpose of Rule 11 sanctions is to 'reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.'" *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (quoting *Massengale v. Ray*, 267 F.3d 1298, 1302–03 (11th Cir.2001)). The Eleventh Circuit has found that sanctions are warranted "when a party files a pleading, motion, or paper that (1) is filed in bad faith or for an improper purpose; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) has no reasonable factual basis. *Tacoronte v. Cohen*, 654 F. App'x 445, 449 (11th Cir. 2016) (citing Fed. R. Civ. P. 11(b)(1)–(3) and *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)). "In deciding whether the signer or the represented party has violated [ ] Rule 11, a federal district court is

required to evaluate whether the motion, pleading or other paper reflected what could reasonably have been believed by the signer at the time of signing." *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1331 (11th Cir. 1992) (citations omitted).

### b.   Discussion

Defendants' representations regarding their contacts with Georgia in their motion to dismiss were false. In arguing that they had very limited contacts with Georgia, Defendants never mentioned that Owens lived in Georgia and that Defendants held Owens out as representing WP's Atlanta location. Rather, Mowers's declaration supporting the motion stated:

> Neither I nor WP have ever had any offices, employees, or business operations in the State of Georgia. The only business I have conducted with persons in Georgia, and the only activities I have engaged in in Georgia, are described below.[108]

The declaration did not mention Owens and Defendants concede that her omission was in error.[109]

---

[108]   ECF 14-2 (Mowers Decl.), ¶ 4.

[109]   ECF 61, at 6 ("Although Owens was not an employee but an independent contractor, Mowers would have included a statement concerning her due to her presence in Georgia while she provided services to WP if he had recalled that she had moved there.").

However, instead of taking responsibility for this original misrepresentation and being forthcoming with information regarding Owens, Defendants doubled down on their misrepresentations in response to HDS's motions. For instance, in response to HDS's abeyance motion, Mowers asserts that he simply forgot about Owens because he had only "sporadic contact with her."[110] But, Owens's declaration states that she was hired to assist Mowers with organization, customer communication, and sales and that she frequently communicated with him.[111] This is supported by HDS's review of the emails provided to it in the California litigation which showed approximately 210 emails between Owens and Mowers during her employment at WP, including emails where the other was copied, and the absence of any emails from Owens to any WP employee other than Mowers.[112]

Defendants also attempted to excuse the omission by claiming that Mowers did not associate Owens with Georgia because when they were first introduced, Owens lived in Ohio.[113] In support of this claim, Defendants provided a copy of an email from Owens to Mowers from when they were first introduced in April

---

[110]   ECF 61, at 6.

[111]   ECF 64-2 (Owens Decl.), ¶¶ 11.

[112]   ECF 64-1, at 8; ECF 64-4, ¶ 8.

[113]   ECF 61-2, at 2–3.

2017.[114] However, Owens's declaration states that by the time she started working for Defendants in 2018, and throughout her entire employment with them, she lived in Georgia.[115] More importantly, it is beyond dispute that Mowers did in fact know that Owens had relocated to Georgia and that he used her location to benefit WP. On April 19, 2018, Mowers emailed: "Taking over for Leslie is Atlanta GA, based Brienne 'Bri' Gamelier."[116] On May 3, 2018, Mowers sent another email stating: "Please feel free to call Brienne Gamelier at our Atlanta location about ordering or I can be reached . . . ."[117]

Defendants were aware—or should have been aware after a reasonable inquiry—that their representations regarding their contacts with Georgia were false under Mowers's first declaration. Once faced with their falsehoods, they made further factual misrepresentations to the Court through a second declaration. This is sanctionable conduct.

However, the Court has considerable discretion in determining whether to impose Rule 11 sanctions, *Donaldson v. Clark*, 819 F.2d 1551, 1556–57 (11th Cir.

---

[114]  *Id.* (Ex. 2), at 19.

[115]  ECF 64-2, ¶¶ 4, 7.

[116]  ECF 64-4, at 31.

[117]  *Id.* at 24.

1987), and it declines to do so at this time. The Court cautions Defendants that any future misrepresentations to this Court, however slight, will be considered cumulatively with the instant conduct in determining whether sanctions are warranted.

## VIII.  Conclusion

Defendants' motion to dismiss [ECF 28] is **DENIED**. Defendants' request to file a second motion to dismiss under Fed. R. Civ. P. 12(b)(6) is **DENIED**. The Court **DENIES AS MOOT** HDS's motion to hold the Court's ruling on Defendants' motion to dismiss in abeyance [ECF 60]. The Court **GRANTS** HDS's motion to file a supplemental brief [ECF 64]. The Court **DENIES** HDS's motion for sanctions under Fed. R. Civ. P. 11 [ECF 67].

Defendants are **ORDERED** to file their Answer within 14 days after entry of this Order. The parties are **ORDERED** to file their Joint Preliminary Report and Discovery Plan within 30 days after entry of this Order. Discovery may proceed as

required by the Federal Rules of Civil Procedure, the Local Rules, and the Court's

Standing Order.

       **SO ORDERED** this the 28th day of September 2020.

                                                 Steven D. Grimberg
                               United States District Court Judge