### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| WHITE CAP, L.P. (f/k/a HD SUPPLY CONSTRUCTION SUPPLY, LTD.), <br><br>    Plaintiff, <br><br>                    v. <br><br> REEF R. MOWERS and WASHOUTPAN.COM, LLC, <br>    Defendants. | Civil Action No. 1:19-cv-02750-SDG |

### OPINION, ORDER, AND PERMANENT INJUNCTION

This matter is before the Court on Plaintiff White Cap, L.P.'s (White Cap) Motion for Default Judgment [ECF 90], Motion for Leave to File Affidavits/Exhibits Under Seal and to Redact Competitive Information from Defendants' View [ECF 93], and Emergency Motion for Interim Preliminary Injunctive Relief [ECF 104]. On January 12, 2021, White Cap sought the Clerk's entry of default as to each Defendant, and the requests were granted the following day.[1] On April 23, White Cap filed its motion for default judgment.[2] It subsequently sought to file under seal certain information related to its default

---

[1]    ECF 83; ECF 84; Jan. 13, 2021 D.E.

[2]    ECF 90.

motion.[3] Finally, on July 28, White Cap filed the emergency motion based on Defendants' post-litigation conduct.[4]

For the reasons detailed below, the default judgment motion is **GRANTED** and the motion to file under seal is **GRANTED**. The emergency motion for a preliminary injunction is **DENIED AS MOOT**.

## I.   Background

Since the Court's September 28, 2020 Order denying Defendants' motion to dismiss describes most of the relevant allegations, they are discussed only briefly here.[5] For purposes of this Order, all well-pleaded facts in the First Amended Complaint (FAC) are deemed admitted by Defendants due to their default. *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1365 (N.D. Ga. 2011).

Plaintiff White Cap, L.P. (formerly known as HDS Supply Construction Supply, LTD)[6] is an industrial products distributor.[7] Defendant Washoutpan.com, LLC (WP) is an importer of "pop-up containment products" and industrial

---

[3]   ECF 93.

[4]   ECF 104.

[5]   *See generally* ECF 76.

[6]   ECFs 101, 103. Although the entity was known by the HDS name during most of the relevant events, this Order refers to it as "White Cap" for the sake of clarity.

[7]   ECF 19, at ¶ 4.

"washout pans," used to contain liquid concrete waste.[8] Defendant Reef Mowers is the owner and sole member of WP, and was at all relevant times acting as its agent within Mowers's scope of authority as WP's owner and sole member.[9]

For several years, pursuant to a contract, White Cap purchased washout pans from Defendants that White Cap then sold to its own customers.[10] The parties terminated their contract in 2018 and entered into a settlement agreement.[11] Thereafter, White Cap began purchasing washout pans from a different vendor.[12] Apparently dissatisfied with this turn of events, Mowers began to engage in a campaign to destroy White Cap's business. Mowers started posting false and disparaging information about White Cap and its products on LinkedIn and WP's website (among other places).[13] Mowers accused White Cap of criminal activity,

---

[8] *Id.* ¶ 9.

[9] *Id.* ¶¶ 6–8.

[10] *Id.* ¶¶ 12–15, 18, 20, 68.

[11] *Id.* ¶ 27.

Although the FAC generally lumps WP and Mowers together as "Defendants," Mowers was not a party to the settlement agreement, having executed it on behalf of WP. ECF 40-1, at 18–22.

[12] ECF 19, ¶¶ 27, 69.

[13] *Id.* ¶¶ 82–214.

as well as OSHA and RICO violations (among other things).[14]

Some of the more outrageous conduct described in the FAC alleges that Mowers made social media posts claiming washout pans sold by White Cap were "fake," had "fake OSHA data," and "could easily fail and kill or injure."[15] Mowers harassed White Cap employees via text, email, and LinkedIn messages, saying "I'm going to put you in jail" and asking if the employees were "[r]eady for jail?"[16] Mowers would often tag the U.S. Attorney's Office or other government agencies in these posts.[17] Mowers directed messages at White Cap's customers, saying "[i]f you have [White Cap's] pans on your job site Do not use! They are fake counterfeits" [sic].[18] Certain of the missives tagged WP's own LinkedIn profile.[19]

In addition to this electronic campaign, Mowers showed up at two construction sites where washout pans sold by White Cap were being used and falsely claimed to be an OSHA inspector. Once there, Mowers claimed that the pans were not OSHA-approved and that the construction company could face

---

[14]  *Id.*

[15]  *Id.* ¶ 86.

[16]  *Id.* ¶¶ 92–94, 110, 112.

[17]  *Id.* ¶¶ 119, 138, 142, 147.

[18]  *Id.* ¶ 149.

[19]  *Id.* ¶¶ 201, 205.

trouble or physical danger if it continued using the pans.[20] As for WP itself, its website and weblinks included thereon identified White Cap as the source of alleged "China Counterfeits."[21]

On September 9, 2019, White Cap filed the FAC, asserting claims against both Defendants for (1) false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1); (2) libel and slander; (3) tortious interference with business relations; and (4) deceptive trade practices. The FAC also alleges that Mowers (5) violated federal and Georgia RICO statutes.[22] The FAC seeks permanent injunctive relief and unspecified compensatory damages, punitive damages, and attorneys' fees.[23]

Defendants moved to dismiss.[24] The Court denied that motion on September 28, 2020, and directed Defendants to answer the FAC within 14 days.[25] After several extensions of that deadline,[26] Defendants failed to file a responsive

---

[20]   *Id.* ¶¶ 173–79, 316–24.

[21]   *Id.* ¶¶ 208–13.

[22]   *See generally* ECF 19.

[23]   *Id.*

[24]   ECF 28.

[25]   ECF 76.

[26]   ECF 79; Nov. 5, 2020 D.E.; Dec. 11, 2020 D.E.

pleading and White Cap sought the Clerk's entry of default on January 12, 2021.[27]

White Cap moved for default judgment on April 23, 2021.[28] It requests

$1,994,423.34 in compensatory damages; $349,801.66 in attorney's fees; $3,433 in

costs; and entry of a permanent injunction restraining Defendants from engaging

in various misconduct.[29]

On July 28, 2021, White Cap filed an emergency motion for interim

preliminary injunctive, alleging continuing malicious conduct by Defendants from

the period after White Cap filed suit through the present.[30] Among the more

egregious actions alleged by White Cap (in addition to a continuation of the type

of conduct described in the FAC), Mowers posted a video threatening to find

White Cap's employees at an industry trade show (prompting White Cap to obtain

a TRO against Mowers);[31] started a GoFundMe campaign to assist with litigation

against White Cap, repeating various false claims about White Cap;[32] posted on

---

[27]  ECF 83; ECF 84.

[28]  ECF 90.

[29]  *Id.*

[30]  *See generally* ECF 104.

[31]  ECF 104-1, at 6–7.

[32]  *Id.* at 7–10.

LinkedIn that Mowers is a victim of sexism by White Cap;[33] and set Mowers's job title on LinkedIn to repeat a false claim about White Cap's products—such that any time Mowers posts on LinkedIn, the false claim is repeated.[34]

## II.   Applicable Legal Standard

Rule 55 governs default judgments. When a defendant "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A default entered pursuant to Rule 55(a) constitutes an admission of all well-pleaded factual allegations contained in a complaint. *Beringer v. Hearshe, Kemp, LLC*, No. 1:10-cv-1399-WSD-ECS, 2011 WL 3444347, at *2 (N.D. Ga. Aug. 8, 2011) (citations omitted). Default judgments are generally entered by the Court. Fed. R. Civ. P. 55(b)(2).

When considering a motion for the entry of a default judgment, "a court must investigate the legal sufficiency of the allegations and ensure that the complaint states a plausible claim for relief." *Functional Prod. Trading, S.A. v. JITC, LLC*, No. 1:12-cv-0355-WSD, 2014 WL 3749213, at *3 (N.D. Ga. July 29, 2014). *See also Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). This includes a review of any affidavit or declaration submitted by the plaintiff. *Frazier*,

---

[33]   *Id.* at 10–11.

[34]   *Id.* at 15.

767 F. Supp. 2d at 1362. When defendants entirely fail to appear or defend against a well-pleaded complaint, entry of a default judgment is appropriate. *Nishimatsu Constr. Co., Ltd., v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (entry of a default judgment in favor of the plaintiff is warranted only if there exists "a sufficient basis in the pleadings for the judgment entered").[35]

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Frazier*, 767 F. Supp. 2d at 1365 (quoting *Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007)). When damages are not "for a sum certain or for a sum that can be made certain by computation," the Court may hold a hearing to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). Thus, if a defendant seeking a default judgment requests an "uncertain

---

[35] *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209–10 (11th Cir. 1981) (adopting as binding precedent all decisions handed down by former Fifth Circuit prior to October 1, 1981).

or speculative damage amount, a court 'has an obligation to assure there is a legitimate basis for any damage award it enters.'" *Beringer*, 2011 WL 3444347, at *2 (quoting *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003)).

## III.   Discussion

White Cap argues that the Court's September 28, 2020 Order on Defendants' motion to dismiss the FAC (the MTD Order) held that White Cap's claims were legally sufficient.[36] That is not entirely accurate. While the MTD Order did determine that Defendants' arguments were insufficient to satisfy Rule 12(b)(6), the Court did not conclude that White Cap had sufficiently alleged *every* element of *every* claim it makes because Defendants did not challenge every element of every claim.[37] Accordingly, while the Court has already ruled on certain aspects of White Cap's causes of action, the Court must still determine whether the FAC adequately alleges a basis for the entry of judgment on each of White Cap's claims. And, while White Cap is entitled to entry of a default judgment, its allegations of damages are not deemed admitted, so the Court must assess both their character and amount. *Frazier*, 767 F. Supp. 2d at 1365. To the extent the damages are not for

---

[36]   ECF 90-1, at 12–13.

[37]   *See generally* ECF 76, at 37–49.

a sum certain, the Court must hold an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The Court addresses in turn each of White Cap's claims and the damages sought.

### A.   Count I: False Advertising

#### 1.   The Cause of Action

White Cap's first cause of action is against both Defendants for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1). Although labelled as a false advertising/unfair competition claim, White Cap's allegations focus on false advertising. Because White Cap makes no argument regarding unfair competition in its motion for default judgment, the Court treats that claim as abandoned.

For a default judgement on false advertising, White Cap must allege sufficient facts to establish: "(1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

#### 2.   White Cap's Allegations

White Cap has plausibly alleged that Defendants' statements on LinkedIn and on the WP website were literally false. For example, White Cap points to

Defendants' assertions that its washout pans were fake and dangerous, and that White Cap had engaged in criminal conduct and fraud.[38] Defendants have also falsely claimed that WP's own products were "OSHA certified" or somehow endorsed by regulatory agencies.[39] The Court has already rejected Defendants' contention that they did not disparage White Cap's products.[40]

False statements such as those to which Defendants admit by virtue of their default clearly had the capacity to deceive and the FAC plausibly alleges that the falsehoods had a material effect on customers' purchasing decisions.[41] The evidence supporting White Cap's default judgment motion further demonstrates this materiality.[42] Even if it did not, "once a court deems an advertisement to be literally false, the [plaintiff] need not present evidence of consumer deception." *Johnson & Johnson Vision Care*, 299 F.3d at 1247. The FAC also alleges that both White Cap's and WP's products affected interstate commerce.[43] Lastly, White Cap

---

[38]   *See, e.g.*, ECF 19, ¶¶ 196–213, 224–29.

[39]   *Id.* ¶¶ 226, 230–31.

[40]   ECF 76, at 40–41.

[41]   ECF 19, ¶ 238.

[42]   *See, e.g.*, ECF 90-3 (Tomaszewicz Aff.), ¶¶ 10, 13–14, 21.

[43]   ECF 19, ¶¶ 4, 95–109, 241, 372, 374.

sufficiently alleges that it was injured because of Defendants' false statements.[44] White Cap has therefore established each of the elements of its false advertising claim under 15 U.S.C. § 1125(a)(1) and entry of default judgment is appropriate.

## B.    Counts II–V: Defamation Claims (Libel and Slander)

In Count II, White Cap asserts a claim for defamation/libel per quod; Count III contains a claim for defamation/libel per se.[45] Counts IV and V assert causes of action for slander per quod and slander per se, respectively.[46] Because these claims have similar elements and White Cap seeks the same recovery on each, the Court addresses them collectively. The Court has already dispensed with Defendants' arguments that these causes of action are not cognizable or fail to adequately allege that Defendants falsely accused White Cap of specific crimes.[47]

### 1.    Applicable Standards

Libel is "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a).

---

[44]  *Id.* ¶ 242. *See also generally* ECF 90-6 (Nelson Aff. redacted)/ECF 92-1 (Nelson Aff. unredacted).

[45]  ECF 19, at 108–24.

[46]  *Id.* at 124–35.

[47]  ECF 76, at 38–40.

Similarly, slander (*i.e.*, oral defamation) can include "[i]mputing to another a crime punishable by law" and "[m]aking charges against another in reference to his trade, office, or profession, calculated to injure him." O.C.G.A. § 51-5-4(a)(1), (3).

For its libel claims, White Cap must show: "(1) a false and defamatory statement concerning [it]; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Boyd v. Disabled Am. Veterans*, 349 Ga. App. 351, 353 (2019) (citations omitted). The difference between per se and per quod violations is in the type of defamatory words used:

> Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality. Statements that tend to injure one in his trade or business also are libelous per se. . . . Defamatory words which are actionable per se are those which are recognized as injurious on their face — without the aid of extrinsic proof. However, if the defamatory character of the words does not appear on their face but [they] only become defamatory by the aid of extrinsic facts, they are not defamatory per se, but per quod, and are said to require innuendo.

*Smith v. DiFrancesco*, 341 Ga. App. 786, 788 (2017) (cleaned up). *See also Barber v. Perdue*, 194 Ga. App. 287, 288 (1989) ("Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality.") (cleaned up).

### 2.    White Cap's Allegations

The FAC plausibly alleges that WP published defamatory statements about White Cap and its employees and that Mowers (as the individual owner of WP and as an agent of WP) made both oral and written defamatory statements that fall into both the per quod and per se categories. For example, Defendants falsely accused White Cap of crimes and intentionally made false, damaging statements about its products and employees.[48] Mowers visited construction sites, impersonated an OSHA inspector, and told one general contractor that he could be punished by OSHA for using White Cap's pans.[49] Mowers's posted statements that White Cap's sales were "Blatant. Criminal. Felony Fraud" and that the products were going to kill someone.[50] Mowers made numerous public statements falsely accusing White Cap of tax evasion and RICO violations (among other things).[51] By referring to White Cap's pans as "fake counterfeit" and not "OSHA certified," Mowers suggested that the pans are somehow illegal and disparaged White Cap's products.[52] The statements were published on the web and made in

---

[48]    ECF 19, ¶¶ 173–79, 259–93, 316–28.

[49]    *Id.* ¶¶ 316–28.

[50]    *Id.* ¶¶ 224–25.

[51]    *Id.* ¶¶ 259–93.

[52]    *Id.* ¶¶ 226–28.

person by Mowers.[53] And the FAC makes abundantly clear that Defendants'
conduct was intentional and designed to harm White Cap.[54] Despite White Cap's
cease-and-desist letter, Defendants continue to publish defamatory statements
about White Cap and its products.[55] Default judgment is appropriate.

### C.     Count VI: Tortious Interference with Business Relations

For a default judgment on this claim, White Cap must show that Defendants
"(1) acted improperly and without privilege, (2) purposely and with malice with
the intent to injure, (3) induced a third party or parties not to enter into or continue
a business relationship with the plaintiff, and (4) for which the plaintiff suffered
some financial injury." *Arford v. Blalock*, 199 Ga. App. 434, 440 (1991) (cleaned up).

As discussed above, White Cap has sufficiently pleaded that Defendants
maliciously made false statements *intended* to interfere with and harm its customer
relationships—and shown that Defendants' conduct actually did interfere with
White Cap's relationship with at least two customers.[56] The FAC alleges that
Mowers's false statements and impersonation of an OSHA inspector induced

---

53   *Id.* ¶¶ 83–89, 173–79, 259–93, 316–28.

54   *Id.* ¶¶ 295–98, 301. *See also generally* ECF 19.

55   *Id.* ¶¶ 158–70, 173–79; ECF 104-1, at 2–3, 6–15; ECF 104–2.

56   ECF 19, ¶¶ 173–79, 355–60.

those customers to demand refunds and damaged White Cap's prospective business relationship with those customers.[57] And, the Court has already held that the FAC properly alleges Defendants were the proximate cause of that harm.[58] Default judgment on this claim is therefore appropriate.

### D.      Count VII: Deceptive Trade Practices

"A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . . (8) [d]isparages the goods, services, or business of another by false or misleading representation of fact." O.C.G.A. § 10-1-372(a)(8). The FAC sufficiently alleges that Defendants engaged in such illicit practices, and the Court has already detailed the many ways in which Defendants disparaged the goods and business of White Cap. Default judgment is appropriate.

### E.      Counts VIII–IX: Federal and State RICO

Under 18 U.S.C. § 1962(c), it is unlawful "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Under O.C.G.A. § 16-14-4(b), it is "unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern

---

[57]   *Id.*

[58]   ECF 76, at 41–42. *See also* ECF 19, ¶¶ 359–60.

of racketeering activity." White Cap asserts causes of action under these RICO statutes only against Mowers.[59] The Court has already ruled on various aspects of the viability of these claims and will not repeat that discussion here.[60] Suffice it to say, White Cap has stated causes of action for violations of both the federal and Georgia RICO statutes and entry of default judgment is appropriate.

### F.      Damages

White Cap seeks $664,807.78 in actual damages, comprised of $533,552.60 in lost profits, $20,283.18 in refunds paid to customers, and $110,972 in reputational damages.[61] It also requests attorneys' fees, costs of litigation, and punitive damages.[62] These amounts are potentially recoverable under more than one claim. White Cap does not, however, appear to seek to recover each type of damage more than once. Nor would White Cap be entitled to such double recovery. *Rasmussen v. Cent. Fla. Council Boy Scouts of Am., Inc.*, 412 F. App'x 230, 234 (11th Cir. 2011). The Court addresses each type of damage separately.

---

[59]   ECF 19, at 139–87.

[60]   ECF 76, at 42–44.

[61]   *See generally* ECF 90-1, at 13 n.2, 29–34.

[62]   *Id.* at 30–31, 34. *See also* ECF 19, at 188–89.

1.      **Actual Damages**

White Cap seeks its actual damages of lost profits, customer returns, and reputational harm in connection with its Lanham Act false advertising, defamation, and federal and Georgia RICO causes of action.[63] (It seeks only the lost profits and customer returns for its tortious interference with business relations claim.[64]) Under the Lanham Act and RICO statutes, White Cap asks the Court to treble the actual damages to $1,994,423.34.[65]

Under the Lanham Act, White Cap can recover "(1) [Defendants'] profits, (2) any damages [it] sustained . . . , and (3) the costs of the action." 15 U.S.C. § 1117(a). For per se defamatory statements, "the element of damages is inferred." *Smith*, 341 Ga. App. at 789. For per quod defamatory statements, White Cap can recover for special harm (such as reputational damage or lost profits) on proof of such damages. *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1377 (N.D. Ga. 2004) ("[W]here the defamatory words do not constitute libel per se, special damages, such as loss of employment, income, or profits, must be pleaded.") (citation omitted); *McGee v. Gast*, 257 Ga. App. 882, 885 (2002) ("The special

---

[63]   ECF 90-1, at 30–34.

[64]   *Id.* at 30–31, 34.

[65]   *Id.*

damages required to support an action for defamation, when the words themselves are not actionable, must be the loss of money or some other material temporal advantage capable of being assessed in monetary value."). Under the RICO statutes, White Cap may treble its actual damages under 18 U.S.C. § 1964(c) or O.C.G.A. § 16-14-6(c).

### i.   Lost Profits

Here, White Cap's calculation of $533,552.60 in lost profits is based on numerous assumptions that cannot reasonably be made certain by computation.[66] As support, it relies on the testimony of its Finance Manager, even though he did not explain how he is qualified to provide such an opinion. Nor does his opinion assess other factors that may have affected White Cap's sales and profits from the fourth quarter of 2018 through the first quarter of 2021.[67] "Georgia law [generally] prohibits awards for lost profits based on speculation, conjecture or hypothesis." *McDermott v. Middle E. Carpet Co., Assoc.*, 811 F.2d 1422, 1426 (11th Cir. 1987) (per curiam) (citations omitted). White Cap even seemingly acknowledges that an

---

[66]   *See generally* ECF 90-6 (Nelson Aff. redacted)/ECF 92-1 (Nelson Aff. unredacted). This affidavit contains sensitive commercial data about White Cap's sales, profits, and expenses, therefore the Court **GRANTS** the motion to file under seal [ECF 93].

[67]   ECF 90-6 (Nelson Aff. redacted)/ECF 92-1 (Nelson Aff. unredacted).

evidentiary hearing on lost profits may be appropriate.[68] Before the Court can make any award of lost profits, an evidentiary hearing is required.

White Cap also wants the Court to treble the lost profits amount under the Lanham Act because of the "willful and malicious nature of Defendants' conduct."[69] Under that statute, however, the Court may only make an award in excess of actual damages if the amount "constitute[s] compensation and not a penalty." 15 U.S.C. § 1117(a). *See also Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1312 (N.D. Ga. 2017) ("An enhanced damages award is discretionary, but it may not be punitive, and must be based on a showing of actual harm.") (cleaned up). White Cap has not yet provided a basis for the Court to treble its alleged lost profits in connection with its Lanham Act cause of action. But it may make an appropriate argument in support of trebling at the evidentiary hearing. And, while White Cap is entitled to treble its actual damages under the RICO statutes, it must still establish the amount of lost profits.

---

[68] ECF 90-1, at 13–14 ("[In] the event the Court concludes that an evidentiary hearing is needed, the only component subject to even hypothetical debate is lost profits, and all other aspects of the requested judgment should be entered in the interim.") (citation omitted).

[69] *Id.* at 30.

### ii.    Customer Returns

As White Cap acknowledges, there is no evidence about Defendants' profits because they are in default and no discovery has been taken.[70] It is also clear that the FAC adequately sets out facts demonstrating that Mowers's appearance at White Cap's customers' job sites, making defamatory statements and falsely posing as an OSHA inspector led directly to returns by those customers and concordant damage to White Cap of $20,283.18 ($3,701.18 returned to Adolfson & Peterson Construction and $16,582 returned to The Conco Companies).[71] These are sums certain that can objectively be calculated and to which White Cap is entitled. A determination about whether White Cap may treble those damages under the Lanham Act or RICO statutes must await the evidentiary hearing.

### iii.    Reputational Harm

White Cap seeks $110,972 for a corrective advertising campaign because of the reputational harm it has suffered.[72] Under O.C.G.A. § 51-12-2(a), general damages may be recovered without proof of any special damages. Further, damages for slander per se (including imputing a crime to another or making

---

70    *Id.* at 30.

71    ECF 19, ¶¶ 173–79; ECF 90-3, ¶¶ 13–14.

72    *See generally* ECF 90-1, at 30–34.

charges against someone's trade or profession calculated to injure) do not require proof of special damages. *See generally* O.C.G.A. § 51-5-4. In the default judgment context, the award of general damages is left to the discretion of the Court. *Zedan v. Bailey*, Case No. 7:19-cv-45 (WLS), 2021 WL 631393, at *6–*7 (M.D. Ga Feb. 18, 2021) (concluding the plaintiff's testimony was credible and awarding general and special damages on a default judgment).

White Cap may likewise be able to recover for its reputational harm under the Lanham Act, which permits recovery for damages White Cap sustained and allows the Court "in its discretion [to] enter judgment for such sum as the court shall find to be just, according to the circumstances of the case" when the recovery of a defendant's profits is "inadequate." 15 U.S.C. § 1117(a). The RICO statutes might also permit recovery for this reputational harm. 18 U.S.C. § 1964(c); O.C.G.A. 16-14-6(c). But this harm cannot be reduced to a sum certain. Fed. R. Civ. P. 55(b)(2). The Court will determine the appropriate reputational harm damages (and trebling), if any, following an evidentiary hearing.

2.      Attorneys' Fees[73] and Costs of Litigation

While White Cap can recover the costs of litigation ($3,433.66) under its false advertising claim,[74] the Lanham Act only permits recovery of attorneys' fees in an exceptional case. 15 U.S.C. § 1117(a). Other statutes provide a more direct method to award White Cap its fees. For instance, reasonable attorneys' fees are allowed under the RICO statutes. 18 U.S.C. § 1964(c); O.C.G.A. § 16-14-6(c). Moreover, Georgia's bad-faith litigation statute, O.C.G.A. § 13-6-11, provides that "where the plaintiff has specially pleaded and has made prayer [for expenses of litigation] and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

As detailed extensively throughout this Order, Defendants' pre-litigation conduct was in bad faith and has caused White Cap unnecessary trouble and expense. Defendants continued to make defamatory statements long after being informed in the cease-and-desist letter that their statements were false. *Zedan*, 2021 WL 631393, at *12 ("Defendant's bad faith in the underlying conduct is evidenced by his continuing to publish defamatory articles after being informed that their

---

[73]   The FAC erroneously identifies this as "Counts [sic] VI."

[74]   ECF 90-1, at 30–31. Litigation costs are also recoverable under Fed. R. Civ. P. 54(d)(1).

content was false and defamatory. . . . Defendant has been stubbornly litigious and caused Plaintiff the expenses incurred in this lawsuit by publishing articles and refusing to retract his statements even after being warned by Plaintiff's counsel that failure to do so would result in further legal action.") (citations omitted).

Given that Defendants have engaged in an all-out campaign to smear White Cap and its products by repeatedly making knowingly false statements, White Cap is entitled to its reasonable attorneys' fees. It seeks a total of $346,368, including $306,368 for 834 hours of completed work, and an estimated $40,000 necessary to complete the default judgment motion.[75] In support of these amounts, White Cap has provided the affidavit of one of its attorneys and various billing summaries showing fees and expenses incurred in connection with this case.[76] But White Cap did not produce the detailed billing information. Without such underlying records, the Court cannot assess the reasonableness of the work performed or the hours incurred. *Circle Y Constr. v. WRH Realty Servs., Inc.*, 721 F. Supp. 2d 1272, 1282–85 (N.D. Ga. 2010) (applying lodestar calculation to determine reasonableness of attorneys' fees under O.C.G.A. § 13-6-11). Accordingly, in advance of the evidentiary hearing, White Cap is directed to file

---

[75]   ECF 90-2.

[76]   *Id.*

the complete billing records of its attorneys so that the Court is able to assess the reasonableness of the fees sought.

### 3.   Punitive Damages[77]

Although the FAC contains a separate cause of action for punitive damages, it does not identify any relevant statute. The motion for default judgment, however, specifies that White Cap asks for punitive damages under O.C.G.A. § 51-12-5.1.[78] Such damages are available "because of aggravating circumstances in order to penalize, punish, or deter a defendant." *Id.* § 51-12-5.1(a). They can be awarded when the plaintiff proves "by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." *Id.* § 51-12-5.1(b). When the defendant acts with "the specific intent to cause harm" in a non-products liability case, Georgia's punitive damages cap does not apply, and "there shall be no limitation regarding the amount which may be awarded as punitive damages against an active tort-feasor." *Id.* § 51-12-5.1(f).

---

[77]   The FAC erroneously identifies this as "Counts [sic] VI."

[78]   ECF 90-1, at 34–35.

The Court can determine liability for punitive damages when a defendant defaults, taking the allegations in the complaint as true. *Wise Moving & Storage v. Reiser-Roth*, 259 Ga. App. 832, 834 (2003) ("[T]he allegations of the complaint in this case [ ] authorized an award of punitive damages. And the default judgment awarded such damages in a specified amount."). *See also Earthlink, Inc. v. Log On Am. Inc.*, No. 1:02-CV-1921-JOF, 2006 WL 1835426, at *4 (N.D. Ga. June 30, 2006) (noting that "[p]unitive damages are available in a default judgment" and awarding punitive damages without a hearing) (citations omitted).

It is quite clear from the well-pled factual allegations that Defendants acted intentionally, with malice and "conscious indifference to consequences," and that "aggravating circumstances" exist. O.C.G.A. § 51-12-5.1(a), (b). Defendants began their campaign of harassment after the parties' business relationship ended and continued into the virtual present despite receiving a cease-and-desist letter.[79]

Although an award of punitive damages may be appropriate, the Court is unable to determine an appropriate amount (if any) before the evidentiary hearing. *Earthlink*, 2006 WL 1835426, at *4 ("The determination of liability for punitive damages and the amount of punitive damages are two different things.")

---

[79] *See, e.g.,* ECF 19, ¶¶ 68–71, 158–60, 163–72; ECF 104, at 6–7. *See generally id.* at 6–15 and ECFs 54 through 54-5.

(cleaned up). "[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Since the amount of actual damages has not yet been set, the appropriateness of punitive damages remains uncertain. Further, White Cap acknowledges that it would be inappropriate for the Court to award punitive damages if it trebles all of White Cap's actual damages. Any award of punitive damages requires an evidentiary hearing.

### G.   Permanent Injunction

The FAC seeks a permanent injunction restraining Defendants from: (1) engaging in unfair and deceptive trade practices; (2) tortiously interfering with White Cap's current and prospective business relationships; (3) falsely advertising, marketing, and/or selling Defendants' products; (4) using any false representations, which misrepresent the nature, characteristics, approval, or qualities of White Cap's products; or (5) engaging in any other false advertising or other unfair commercial activity with regard to any of White Cap's products.[80] In its motion for default judgment, White Cap also requests that Defendants be enjoined from defaming and disparaging it.[81] It is not clear how this adds anything

---

[80]   ECF 19, at 190.

[81]   ECF 90-1, at 36–37.

to White Cap's original request, but it is impermissible nonetheless: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54. Alternatively, White Cap filed an emergency motion for preliminary injunctive relief to protect it before a final judgment.[82]

To obtain a permanent injunction, White Cap must show that (1) it has suffered an irreparable injury; (2) its remedies at law are inadequate; (3) the balance of hardships weighs in its favor; and (4) a permanent injunction would not disservice the public interest. *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

The reputational harm White Cap suffered has been adequately pleaded and demonstrated in the affidavits supporting its motion for default judgment and emergency motion for a preliminary injunction.[83] White Cap has lost and may continue to lose business because of Defendants' false allegations about it. While White Cap is entitled to certain monetary damages as well, there is no adequate remedy at law to restore its tarnished reputation or to prevent continuing harm from Defendants' actions—damage to White Cap continues as long as Defendants continue their wrongful conduct.

---

[82]   *See generally* ECF 104.

[83]   *See generally* ECFs 90, 90-1 through 90-6, 104, 104-1 through 104-2.

Further, the harm to White Cap is far outweighed by any imposition on Defendants since they have no legitimate interest in making false and defamatory statements about a competitor. And the public certainly has an interest in ensuring that only truthful information about products and businesses is disseminated. *See, e.g., Holmes v. Dominique*, No. 1:13-CV-04270-HLM, 2015 WL 11236539, at *6 (N.D. Ga. Jan. 20, 2015) (entering injunction restraining the defendant from making "derogatory, untrue comments about Plaintiff on the internet or in other public forums" and concluding there was no public interest in permitting the defendant to make defamatory or false statements) (footnote omitted). Under these facts, the Court finds no difficulty in concluding that a permanent injunction is appropriate here. *Kason Indus., Inc. v. L&T Restaurant Equip. Inc.*, Civ. A. No. 3:19-cv-00111-TCB, 2019 WL 9633211, at *5–*6 (N.D. Ga. Dec. 17, 2019); *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1222–23 (S.D. Fla. 2004) (same).

## IV.   Conclusion

White Cap's motion for default judgment is **GRANTED** [ECF 90]. Its motion to file under seal [ECF 93] is also **GRANTED**. The emergency motion for a preliminary injunction is **DENIED AS MOOT**. Because there remain issues for the Court to resolve concerning the damages White Cap seeks, final judgment cannot yet be entered yet. *Specialty Polymers USA, LLC v. Zhenguo (Leo) Liu*, 331 F.R.D. 187,

193 (N.D. Ga. 2019) (granting motion for default judgment but declining to enter final judgment before ruling on damages).

An evidentiary hearing concerning White Cap's lost profits, reputational harm, treble damages (if any), attorneys' fees, and punitive damages is required and will be set by separate notice. At least two days before the hearing, White Cap is instructed to file on the docket an additional declaration attaching the detailed billing information for attorneys' fees through the present.

**IT IS FURTHER ORDERED** that Defendants Reef Mowers and Washoutpan.com, LLC, as well as the officers, agents, employees, affiliates, assignees, parents, and all persons acting in concert or participation with them (collectively, Defendants), are each **PERMANENTLY ENJOINED AND RESTRAINED** from, directly or indirectly: (1) engaging in unfair and deceptive trade practices; (2) tortiously interfering with Plaintiff White Cap, L.P.'s (f/k/a HD Supply Construction Supply, Ltd.) (White Cap) current and prospective business relationships; (3) falsely advertising, marketing, and/or selling Defendants' products; (4) using any false or misleading statements or representations which misrepresent the nature, characteristics, approval, or qualities of White Cap's products; or (5) engaging in any other false advertising or other unfair commercial activity with regard to any of White Cap's products.

**White Cap is DIRECTED to send a copy of this Order to Defendants using USPS or an overnight delivery company that can provide proof of delivery.**

**SO ORDERED** this the 11th day of August 2021.

Steven D. Grimberg
United States District Court Judge