**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WHITE CAP, L.P. (f/k/a HD SUPPLY CONSTRUCTION SUPPLY, LTD.),<br>    Plaintiff,<br>          v.<br>REEF R. MOWERS and WASHOUTPAN.COM, LLC,<br>    Defendants. | Civil Action No.<br>1:19-cv-02750-SDG |

## OPINION AND ORDER

This matter is before the Court on Plaintiff White Cap, L.P.'s (White Cap) motion for contempt [ECF 137] and motion for leave to supplement the motion for contempt [ECF 140]. For the following reasons, the motion to supplement is **GRANTED** and the motion for contempt is **DENIED without prejudice**.

**I.    Background**

The history of this litigation, and of Defendants' execrable behavior, is detailed in the Court's August 11, 2021, January 3, 2022, and March 15, 2022 Orders and will not be repeated here.[1] The August 11 Order entered a default judgment and permanent injunction against Defendants, enjoining them from (1) engaging in unfair and deceptive trade practices; (2) tortiously interfering with White Cap's

---

[1]    ECF 109; ECF 130; and ECF 136.

business relationships; (3) falsely advertising, marketing, or selling Defendants' own products; (4) using any false or misleading statements or representations concerning White Cap's products; and (5) engaging in any other false advertising or other unfair commercial activity with regard to any of White Cap's products.[2] The January 3 Order awarded compensatory and punitive damages to White Cap, as well as attorneys' fees and costs.[3] The March 15 Order directed Mowers to stop ex parte communications with the Court and Undersigned's Chambers.[4]

On March 28, 2022, White Cap filed its motion for contempt.[5] It asserts that Mowers violated the August 11 and March 15 Orders. As a result, White Cap seeks (among other things) entry of a civil contempt sanction against Mowers; damages for the alleged violation of the permanent injunction; attorneys' fees and costs incurred in bringing the contempt motion; an injunction against non-party LinkedIn Corporation; and a referral of Mowers to the United States Attorney.[6]

---

[2]  ECF 109, at 31.

[3]  ECF 130.

[4]  ECF 136.

[5]  ECF 137.

[6]  *Id.* White Cap's motion incorrectly indicates that the March 15 Order was entered in 2021 (rather than 2022).

In support of its original contempt motion, White Cap pointed to only one event as evidence of Mowers's alleged violations of the Court's Orders: a March 19, 2022 post on Mowers's LinkedIn page:[7]



---

7   ECF 137-1, at 8.

White Cap claims that this "vile, inflammatory and reprehensible" post violates the terms of the permanent injunction.[8] The post was "liked" by one of White Cap's customers.[9]

On April 21, 2022, White Cap sought leave to supplement its motion for contempt.[10] The supplement is based on messages and a video Mowers sent on April 14 and 15, 2022 to an employee (Vaughn Mollenauer) of a vendor with which White Cap does business:[11]

---

[8]   ECF 137-1, at 7–8.
[9]   ECF 137-1, at 9.
[10]  ECF 140.
[11]  ECF 140-1, at 3–6.



(Screen shot from video sent by Mowers.)

Based on these messages and the video, Mollenauer was granted a stalking temporary protective order by the Superior Court of Forsyth County, Georgia.[12]

## II. Applicable Legal Standards

If a plaintiff has obtained an injunction and believes the enjoined defendant has violated the Court's order, the plaintiff must move for an order directing the defendant to show cause why he should not be held in civil contempt. *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000) (citations omitted). Only if the Court is satisfied that the motion shows a violation of the injunction should it issue such an order to show cause. *Id.* White Cap's motion skips these steps and asks the Court to jump directly to imposing sanctions. This is improper. Rather than denying White Cap's motion on that basis, the Court instead construes the motion as a request for issuance of the necessary order to show cause.

To meet its burden to show civil contempt, White Cap must prove by clear and convincing evidence that the underlying orders were violated. *McGregor v. Chierico,* 206 F.3d 1378, 1383 (11th Cir. 2000); *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990) ("In a civil contempt proceeding, the petitioning party bears the burden of establishing by 'clear and convincing' proof that the

---

[12]  *Id.* at 6.

underlying order was violated.") (citations omitted). Because Mowers did not provide a response to White Cap's motion,[13] White Cap asserts that the Court should deem the non-response as "a concession on the merits of the Motion."[14] Local Rule 7.1 states that a failure to respond to a motion "shall indicate that there is no opposition" to it. LR 7.1(B), NDGa. This does not, however, mean that White Cap is somehow relieved of its burden to show a violation of the injunction by clear and convincing evidence. Without a showing that the Court's August 11 or March 15 Orders were violated, the Court will not issue an order to show cause.

### III.   Discussion

#### A.   Supplemental Briefing

In 2018, White Cap stopped purchasing washout pans from Mowers's company and began purchasing them from Concrete Pump Supply (CPS).[15] Vaughn Mollenauer is an employee of CPS.[16] After White Cap filed its initial contempt motion, Mowers sent threatening messages to Mollenauer.[17] White Cap

---

[13] The Court concludes that White Cap's efforts to serve the motion on Mowers by U.S. mail at his address of record and by email [ECF 138] were sufficient under the circumstances.

[14] ECF 139, at 3.

[15] ECF 140-1, at 2.

[16] *Id.*

[17] *Id.* at 3–6.

requests that the Court permit it to file additional briefing concerning this conduct.[18] Mowers did not respond to the motion for leave. The Court sees no reason not to permit White Cap to provide additional evidence in support of its bid for contempt sanctions, particularly in light of Mowers' non-opposition. Accordingly, the Court grants White Cap's motion for leave and will consider the supplemental brief in support of the contempt motion.

### B. Alleged Violations of the Permanent Injunction

White Cap argues that Mowers violated the permanent injunction by (1) making the offending March 19, 2022 post, which White Cap claims was "designed to destroy Plaintiff's business by insinuating that Plaintiff and anyone who does business with Plaintiff is racist"[19] and (2) sending threatening messages to Mollenauer.[20] However, White Cap has failed to show by clear and convincing evidence that either of these actions violated the August 11 injunction.

#### 1. LinkedIn Post

Mowers's March 19 LinkedIn post did not comment on White Cap's products and White Cap has not explained how it in fact interfered with its

---

[18]  *See generally* ECF 140.

[19]  ECF 137-1, at 13.

[20]  ECF 140-2.

business relationships. Mowers did not make any false or misleading statements of fact. Rather, the post expressed an opinion—that people should not do business with White Cap because its top management are racist or that White Cap is racist by association with such individuals. White Cap's insistence that this "insinuation" violated the permanent injunction[21] is not supported by any explanation of *how* Mowers's opinions were a deceptive trade practice, improperly interfered with a business relationship, or constituted an unfair commercial activity.[22] Declaring that "[t]here is simply no question that the March [19] post is an unfair and deceptive trade practice" is not a substitute for actual argument or evidence.[23] As White Cap acknowledges, a deceptive trade practice under Georgia law requires a false or misleading representation of fact.[24] White Cap has not pointed to any *fact* at all. Its displeasure with Mowers's *opinions* is not evidence of a violation of the Court's order.

Nor has White Cap explained how one of its customers "liking" Mowers's LinkedIn post actually interfered or threatened to interfere with White Cap's

---

[21] ECF 137-1, at 13.

[22] *Id.* at 13.

[23] *Id.*

[24] *Id.* at 13, 13 n.1.

business relationships. Without any explanation, it is unclear how the post constituted tortious interference. The post said nothing about Defendants' or White Cap's products, so it could not have violated the injunction's prohibitions on "falsely advertising, marketing, and/or selling Defendants' products; [ ] using any false or misleading statements or representations which misrepresent the nature, characteristics, approval, or qualities of White Cap's products; or [ ] engaging in any other false advertising or other unfair commercial activity with regard to any of White Cap's products."[25]

Mowers indeed has a long, documented history of defaming, maligning, and attacking White Cap—particularly through the use of LinkedIn.[26] That history is part of what led to the entry of the permanent injunction in the first place. But White Cap is not entitled to silence everything Mowers says under the guise of that injunction—only those false and defamatory statements of *fact* that are within the scope of the August 11 Order. The Court will not sanction Mowers or refer him for criminal investigation for exercising his right to express opinions that many, including undersigned, find offensive.

---

[25] ECF 109, at 31.

[26] ECF 137-1, at 14.

### 2. Threatening Text Messages

The text messages Mowers sent Mollenauer are indeed threatening and disturbing, as is the accompanying video of firearms.[27] But, as with the original contempt motion filed by White Cap, the supplemental briefing is long on innuendo and short on actual evidence and argument. There is no indication in the text messages themselves that they were directed at Mollenauer because of *White Cap's* relationship with CPS.[28] In fact, White Cap acknowledges that CPS is a competitor of Mowers's company.[29] Nor is there any indication that Mowers's conduct was motivated by White Cap at all rather than some personal animus Mowers has for Mollenauer. While it is possible the text messages could be evidence of tortious interference with White Cap's business relationship with CPS (which *would* be a violation the August 11 injunction), White Cap has not presented clear and convincing evidence of this. White Cap simply expects the Court to accept that Mowers's misconduct was targeted at White Cap despite any indication of this in the text messages themselves.

---

[27]   ECF 140, at 4.
[28]   *Id.*
[29]   *Id.* at 2 n.2.

To the extent Mowers's messages could constitute criminal conduct toward Mollenauer,[30] it is unclear how *White Cap* has any basis to press such arguments here. And a state court has already issued a restraining order in favor of Mollenauer. White Cap has not provided any basis for how this Court can appropriately consider criminal conduct directed at Mollenauer as a violation of the permanent injunction in favor of *White Cap*.

### C.   Directive Concerning Ex Parte Communications

White Cap asserts that Mowers's LinkedIn post violated the Court's March 15 Order prohibiting ex parte communications.[31] The post itself was not an ex parte communication; however, it clearly encourages others to do what the Court dictated that Mowers himself could not—engage in improper communications with members of the Court's staff. But it is by no means clear that Mowers's post is within the scope of the March 15 Order, given that it did not concern the substance of this litigation or seek relief from the Court. Finally, the Order was served on Mowers by mail and emailed to him on March 16.[32] There is no evidence in the record showing that Mowers had knowledge of the order at the time of the

---

[30]   ECF 140-2, at 8–10.

[31]   ECF 137-1, at 12.

[32]   Mar. 15, 2022 D.E.

March 18 post. While it is presumed that he had constructive knowledge of it, Fed. R. Civ. P. 6(d), the Court exercises its discretion to decline imposing civil contempt sanctions and a criminal referral based on that presumption.[33]

As for the text messages to Mollenauer, despite White Cap's repeated insistence that they violated the Court's order concerning ex parte communications, there is no explanation whatsoever about how that could be true. The text messages were not ex parte communications, did not encourage improper ex parte communications, and sought nothing from the Court.

**IV.   Conclusion**

White Cap's Motion for Leave to File Limited Supplemental Briefing [ECF 140] is **GRANTED**. The Clerk is **DIRECTED** to file ECF 140-2 separately on the docket. However, White Cap has not presented clear and convincing evidence that Mowers violated the Court's August 11, 2021 Permanent Injunction or the March 15, 2022 Order. The Court therefore declines to enter an order directing Mowers to show cause why he should not be held in civil contempt. The Motion for Contempt, to Enforce Violation of Permanent Injunction and for the Court to Refer this Matter to the United States Attorney [ECF 137] is **DENIED without**

---

[33]   Of course, there is nothing to prevent White Cap from making a referral to the U.S. Attorney's Office or any other prosecuting office on its own.

prejudice. Should Mowers continue to engage in conduct White Cap believes violates the Court's injunction, it may renew its Motion for Contempt.

**SO ORDERED** this 31st day of March, 2023.

Steven D. Grimberg
United States District Court Judge